UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARLYN COLLEEN CAIRNS, | No. 2:18-cv-2905 DB |
| Plaintiff, | |
| v. | ORDER |
| ANDREW SAUL, Commissioner of Social Security,[1] | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff's motion argues that the Administrative Law Judge's treatment of the medical opinion evidence, evaluation of the Listing Impairments, residual functional capacity determination, lay witness testimony, and step five finding were erroneous.

////

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. See https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019). Accordingly, Andrew Saul is substituted in as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c).  (See ECF Nos. 6 & 7.)

1

For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

## PROCEDURAL BACKGROUND

In April of 2013, plaintiff filed applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") and for Supplemental Security Income ("SSI") under Title XVI of the Act alleging disability beginning on December 31, 2012. (Transcript ("Tr.") at 356-72.) Plaintiff's alleged impairments included carpal tunnel in both hands, fibromyalgia, panic attacks, extreme fatigue, tennis elbow, and asthma. (Id. at 422.) Plaintiff's applications were denied initially, (id. at 228-33), and upon reconsideration. (Id. at 237-42.)

Plaintiff requested an administrative hearing and a hearing was held before an Administrative Law Judge ("ALJ") on January 27, 2015. (Id. at 88-134.) In a decision issued on April 29, 2015, the ALJ found that plaintiff was not disabled. (Id. at 217.) However, on September 13, 2016, the Appeals Council vacated the ALJ's April 29, 2015 decision and remanded the matter back to the ALJ for further proceedings. (Id. at 222-26.)

On remand, another hearing was held before an ALJ on April 11, 2017. (Id. at 38-87.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 38-40.) In a decision issued on October 23, 2017, the ALJ again found that plaintiff was not disabled. (Id. at 31.) The ALJ entered the following findings:

> 1. The claimant meets the insured status requirements of the Social Security Act through September 30, 2013.
>
> 2. The claimant has not engaged in substantial gainful activity since December 31, 2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).
>
> 3. The claimant has the following severe impairments: asthma; bilateral carpal tunnel syndrome; right lateral epicondylitis; lumbar degenerative disc disease; annular bulging of the cervical spine; fibromyalgia; asthma; anxiety; and depression (20 CFR 404.1520(c) and 416.920(c)).
>
> 4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of

    the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

    5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can frequently climb ramps or stairs; frequently balance, stoop, kneel, crouch, or crawl; no climbing of ladders, ropes, or scaffolds; can frequently handle and finger; needs to avoid concentrated exposure to fumes, odors, dusts, and gases; is limited to simple, repetitive, tasks; and is limited to occasional interaction with the public and frequent interaction with co-workers or supervisors.

    6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

    7. The claimant was born [in] 1967 and was 45 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age (20 CFR 404.1563 and 416.963).

    8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

    9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

    10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

    11. The claimant has not been under a disability, as defined in the Social Security Act, from December 31, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Id. at 18-30.)

On August 29, 2018, the Appeals Council denied plaintiff's request for review of the ALJ's October 23, 2017 decision. (Id. at 1-5.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on November 2, 2018. (ECF. No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012).

Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
>
> Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987). The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

////

**APPLICATION**

Plaintiff's pending motion asserts the following five principal claims: (1) the ALJ's treatment of the medical opinion evidence constituted error; (2) the ALJ improperly rejected plaintiff's testimony; (3) the ALJ's residual functional capacity determination was unsupported; (4) the ALJ erred at step five of the sequential evaluation; and (5) the ALJ's evaluation of the Listing Impairments was erroneous.[3]  (Pl.'s MSJ (ECF No. 13-1) at 22-35.[4])

**I.   Medical Opinion Evidence**

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830.  This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31.  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.)  Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661,

---

[3] The court has reordered plaintiff's claims for purposes of clarity and efficiency.

[4] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

671 (9th Cir. 2012) (quoting <u>Bray v. Comm'r of Soc. Sec. Admin.</u>, 554 F.3d 1219, 1228 (9th Cir. 2009)).

Here, plaintiff challenges the ALJ's treatment of the opinion offered by licensed clinical psychologist Dr. Chester Sunde.[5]  (Pl.'s MSJ (ECF No. 13-1) at 22.)  Dr. Sunde issued a comprehensive psychiatric evaluation pursuant to an examination conducted on September 4, 2013.  (Tr. at 574-77.)  The ALJ's decision recounted Dr. Sunde's findings, stating:

> From a mental standpoint the claimant complained of anxiety panic attacks and isolative behavior.  The mental status examination revealed the following positive findings: her concentration was significantly impaired; pace was somewhat slow; she was reluctantly cooperative; thoughts were distracted; she was preoccupied with her anxiety and with anger and frustration over difficulty accessing treatment; mood was anxious and irritable; she struggled to spell the word "WORLD" backwards and made one error.  The findings from the mental status examination were otherwise unremarkable.  Notably, she made fair eye contact, appeared to be a reliable informant, and was oriented to person, place, time, and situation.  Dr. Sunde diagnosed panic disorder, generalized anxiety disorder, and alcohol dependence and assessed a global assessment of functioning (GAF) score of 47.[6]  Based on the examination, from a psychological standpoint, he opined the following: no impairment in her ability to understand, remember, and complete simple commands; mild to moderate impairment in her ability to understand, remember and complete complex commands; moderate to marked impairment in her ability to interact appropriately with supervisors, coworkers and the public; moderate to marked impairment in her ability to comply with job rules, safety and attendance; moderate to marked limitation

////

////

---

[5] The opinions of a medical specialist regarding the specialist's area of expertise "are given more weight than the opinions of a nonspecialist."  <u>Smolen v. Chater</u>, 80 F.3d 1273, 1285 (9th Cir. 1996); <u>see also</u> <u>Benecke v. Barnhart</u>, 379 F.3d 587, 594 (9th Cir. 2004) ("Each rheumatologist's opinion is given greater weight than those of the other physicians because it is an opinion of a specialist about medical issues related to his or her area of specialty.").

[6] A Global Assessment of Functioning ("GAF") score represents a present rating of overall psychological functioning on a scale of 0 to 100.  <u>See</u> Diagnostic and Statistical Manual of Disorders, at 34 (Am. Psychiatric Ass'n, 4th Ed. 2000) ("DSM-IV"); <u>see also</u> <u>Keyser v. Commissioner Social Sec. Admin.</u>, 648 F.3d 721, 723 (9th Cir. 2011) ("A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment.").  A GAF score in the range of 41 to 50 denotes: "Serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)."  DSM-IV at 34.

6

> in her ability to respond to change in a normal workplace setting; and moderate to marked ability to maintain persistence and pace in a normal workplace setting.

(Id. at 27.)

The ALJ purported to afford "[p]atrial weight" to Dr. Sunde's opinion, finding that "the moderate limitations are supported by the paragraph B analysis and the documented mental symptoms described above[.]" (Id. at 28.) The ALJ, however, found that "any marked limitations" were not supported. (Id.)

A claimant's residual function capacity ("RFC") is "the most [the claimant] can still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a); 20 C.F.R. § 416.945(1); see also Cooper v. Sullivan, 880 F.2d 1152, n.5 (9th Cir. 1989) ("A claimant's residual functional capacity is what he can still do despite his physical, mental, nonexertional, and other limitations."). In conducting an RFC assessment, the ALJ must consider the combined effects of an applicant's medically determinable impairments on the applicant's ability to perform sustainable work. 42 U.S.C. § 423(d)(2)(B); Macri v. Chater, 93 F.3d 540, 545 (9th Cir. 1996). The ALJ must consider all of the relevant medical opinions as well as the combined effects of all of the plaintiff's impairments, even those that are not "severe." 20 C.F.R. §§ 404.1545(a); 416.945(a); Celaya v. Halter, 332 F.3d 1177, 1182 (9th Cir. 2003). "[A]n RFC that fails to take into account a claimant's limitations is defective." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009). The ALJ must determine a claimant's limitations on the basis of "all relevant evidence in the record." Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

Here, the ALJ found that Dr. Sunde's opinion finding plaintiff moderately limited in several respects was supported by the record. (Tr. at 28.) The ALJ's RFC determination, however, does not account for all of Dr. Sunde's opined moderate limitations. For example, Dr. Sunde opined that plaintiff's ability to comply with job rules, safety and attendance was at least moderately impaired. (Id. at 577.) The ALJ's RFC determination, however, accounts for no impairment in the ability to comply with job rules, safety, or attendance. (Id. at 21.) Likewise, Dr. Sunde found that plaintiff was at least moderately impaired in the ability to interact with

supervisors.  (Id. at 577.)  The ALJ's RFC determination, however, found that plaintiff could tolerate "frequent interaction" with supervisors.  (Id. at 21.)

Moreover, with respect to Dr. Sunde's opined marked limitations, the ALJ's supported the decision to rejecting these opined limitations by finding that plaintiff had received "routine mental health treatment[.]"  (Id. at 28.)  No citation or further explanation was provided.  Elsewhere in the opinion the ALJ stated that plaintiff's treatment "has primarily consisted of routine non-emergency outpatient visits and psychiatric medications[.]"  (Id. at 26.)  It is unclear to the court why treatment consisting of outpatient visits and psychiatric medications would preclude the presence of any marked limitation, and the ALJ did not attempt to provide any such explanation.

The ALJ also criticized Dr. Sunde's opinion by noting that it "appears to have been primarily made on a one time examination[.]"  (Id. at 28.)  But the opinions of examining physicians are frequently, if not usually, based on a one-time examination.  The final reason offered by the ALJ for rejecting Dr. Sunde's opined marked limitation was the ALJ's vague and conclusory assertion that those limitations were "not consistent with all of the mental health evidence as a whole."  (Id.)

> To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do not suffice).

Accordingly, the court finds that the ALJ failed to offer a specific and legitimate, let alone clear and convincing, reason for rejecting Dr. Sunde's opinion.  Plaintiff, therefore, is entitled to

////

summary judgment on the claim that the ALJ's treatment of the medical opinion evidence constituted error.

## II. Plaintiff's Subjective Testimony

Plaintiff argues that the ALJ's evaluation of plaintiff's subjective complaints was erroneous. (Pl.'s MSJ (ECF No. 13-1) at 32-35.) The Ninth Circuit has summarized the ALJ's task with respect to assessing a claimant's credibility as follows:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so[.]

Lingenfelter v. Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (citations and quotation marks omitted). "The clear and convincing standard is the most demanding required in Social Security cases." Moore v. Commissioner of Social Sec. Admin., 278 F.3d 920, 924 (9th Cir. 2002). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking[.]" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints."[7] Valentine v. Commissioner Social Sec. Admin., 574

---

[7] In March 2016, Social Security Ruling ("SSR") 16-3p went into effect. "This ruling makes clear what our precedent already required: that assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms after the ALJ finds that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms,' and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness." Trevizo v. Berryhill, 871 F.3d 664, 679 (9th Cir. 2017) (quoting SSR 16-3p) (alterations omitted).

F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).  In weighing a claimant's credibility, an ALJ may consider, among other things, the "[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains."  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)).  If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing."  Id.

Here, the ALJ summarized plaintiff's testimony as follows:

> The claimant stated in a disability report that carpal tunnel in both hands, fibromyalgia, panic attacks, extreme fatigue, exhaustion, weakness, tennis elbow of the right arm, and asthma limit her ability to work.  At the initial administrative hearing the claimant indicated that her conditions include bilateral carpal tunnel syndrome, asthma, cardiomyopathy, right lateral epicondylitis, lumbar low back problems, fibromyalgia, and anxiety.  She alleged that her back problems, wrist problems, and fibromyalgia have gotten worse since 2012.  The claimant further alleged pain/electric shock on her skin and that she is exhausted all of the time.  She also reported carpal tunnel syndrome surgeries have made things worse, as she has she (sic) numbness loss of feeling, and pain.  The claimant testified to having exhaustion, back pain, neck pain, headaches, and lower back pain that radiates to her buttocks and right leg.  She can purportedly sit for five to ten minutes before needing to get up and stretch or lay down.  The claimant alleged she can walk for 10 minutes before needing to rest.  She also stated she could stand in line for five minutes and can lift or carry five pounds.  With regard to her mental symptoms, the claimant alleged panic/anxiety attacks.  Side effects of her medications purportedly include loss of appetite, weakness, vomiting, fatigue, loss of water, she cannot.

(Tr. at 22.)

The ALJ found that plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged, but that plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were "not entirely consistent with the medical evidence and other evidence in the record for the reason explained in [the] decision."[8]  (Id. at 22.)

---

[8] "ALJs routinely include this statement in their written findings as an introduction to the ALJ's credibility determination" before "identify[ing] what parts of the claimant's testimony were not

In support of this finding, the ALJ asserted that plaintiff's testimony was "not entirely consistent with and supported by evidence of record," as plaintiff's treatment "primarily consisted of medications and outpatient visits," and that the "medical evidence of record does not reveal a significant increase in her symptoms[.]" (Id. at 23.) The ALJ, however, did not explain why treatment via outpatient visits and medication was inconsistent with any specific aspect of plaintiff's testimony. Likewise, the ALJ relied on the fact that at an October 2013 examination, plaintiff was found to ambulate normally, sit comfortably, get on and off the exam table without a problem, etc. (Id.) But the ALJ did not explain why a single example from October of 2013, of plaintiff being able to move normally should discredit the entirety of plaintiff's subjective testimony. Moreover, there was in fact some evidence of record that revealed a "worsening" of plaintiff's symptoms. See, e.g., Id. at 617.

Additionally, "after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity" of the symptoms. Burch v. Barnhart, 400 F.3d 676, 680 (9th Cir. 2005); see also Putz v. Astrue, 371 Fed. Appx. 801, 802-03 (9th Cir. 2010) ("Putz need not present objective medical evidence to demonstrate the severity of her fatigue."); Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) ("If an adjudicator could reject a claim for disability simply because a claimant fails to produce medical evidence supporting the severity of the pain, there would be no reason for an adjudicator to consider anything other than medical findings.").

Another reason offered by the ALJ for rejecting plaintiff's testimony was that plaintiff's testimony was "not entirely consistent with her activities of daily living." (Tr. at 23.) In support of this conclusion, the ALJ noted that although plaintiff "did not engage in substantial gainful

---

credible and why." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1103 (9th Cir. 2014). "The use of this generic language is not itself reversible error . . . but it inverts the responsibility of an ALJ, which is first to determine the medical impairments of a claimant based on the record and the claimant's credible symptom testimony and only then to determine the claimant's RFC. By rejecting a claimant's subjective symptoms 'to the extent they are inconsistent with the above residual functional capacity assessment,' the agency indicates that it is failing properly to incorporate a claimant's testimony regarding subjective symptoms and pain into the RFC finding, as it is required to do." Trevizo, 871 F.3d at 679 n.6.

11

activity" plaintiff "worked during the relevant period." (Id.) That work, however, occurred in 2013, and only amounted to earnings of $3,213.10, an average of "$284.43 per month." (Id. at 18.) Plaintiff testified this work was "very minimal" in terms of hours worked "and tasks," due to plaintiff's "disabilities." (Id. at 51.) "The question is not simply . . . the fact of employment or the extent of her earnings. Rather, the answer turns on whether she was disabled within the meaning of the Act notwithstanding the fact that she actually did work." Stark v. Weinberger, 497 F.2d 1092, 1100 (7th Cir. 1974).

The ALJ also supported this conclusion by reliance on plaintiff's ability to "dress and bathe herself," "take care of pets," "do the laundry, dusting, and other light surface cleaning," and read, and watch television. (Tr. at 23.) However,

> [t]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons ... and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012). In this regard, the Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled." Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001); see also Garrison v. Colvin, 759 F.3d 995, 1016 (9th Cir. 2014) (citation omitted) ("[I]mpairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day.").

With respect to plaintiff's "alleged panic/anxiety attacks," the ALJ offered only two reasons for rejecting this testimony. First, the ALJ again relied on plaintiff's ability to read and watch television, which is erroneous for the reasons discussed above. The ALJ also relied on the ALJ's observation of plaintiff "throughout the hearing[.]" (Tr. at 23.) However, "[t]he ALJ's observations of a claimant's functioning may not form the sole basis for discrediting a person's testimony." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007); see also Perminter v. Heckler, 765

F.2d 870, 872 (9th Cir. 1985) ("The ALJ's reliance on his personal observations . . . at the hearing has been condemned as 'sit and squirm' jurisprudence."); Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984) ("The fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible.").

For the reasons stated above, the court finds that the ALJ failed to offer a clear and convincing reason for rejecting plaintiff's testimony. Accordingly, plaintiff is also entitled to summary judgment on this claim.

### III.   RFC

Plaintiff next argues that the ALJ's finding that plaintiff could perform the exertional demands of light work was not supported by substantial evidence. (Pl.'s MSJ (ECF No. 13-1) at 30.) As noted above, in determining a plaintiff's RFC, the ALJ must consider the combined effects of plaintiff's medically determinable impairments on the ability to perform sustainable work. Macri, 93 F.3d at 545. "[A]n RFC that fails to take into account a claimant's limitations is defective." Valentine v. Commissioner Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).

Here, because the ALJ erroneously rejected Dr. Sunde's opinion and plaintiff's subjective testimony the RFC failed to take into account all of plaintiff's limitations and was defective. Accordingly, plaintiff is also entitled to summary judgment on this claim.

### IV.   Step Five Error

Plaintiff argues that the ALJ failed to satisfy the burden of establishing that there is work plaintiff can perform because the ALJ's hypothetical question to the Vocational Expert was incomplete. (Pl.'s MSJ (ECF No. 13-1) at 35-36.)

At step five of the sequential evaluation, "the Commissioner has the burden 'to identify specific jobs existing in substantial numbers in the national economy that a claimant can perform despite his identified limitations.'" Zavalin v. Colvin, 778 F.3d 842, 845 (9th Cir. 2015) (quoting Johnson v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)) (alterations omitted). The ALJ can meet her burden by either taking the testimony of a Vocational Expert ("VE") or by referring to the

////

grids. See Lounsburry v. Barnhart, 468 F.3d 1111, 1114-15 (9th Cir. 2006). Here, the ALJ relied on the testimony of a VE. (Tr. at 30, 73-86.)

However, while an ALJ may pose a range of hypothetical questions to a VE based on alternate interpretations of the evidence, the hypothetical question that ultimately serves as the basis for the ALJ's determination, i.e., the hypothetical question that is predicated on the ALJ's final residual functional capacity assessment, must account for all of the limitations and restrictions of the particular claimant. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009). "If an ALJ's hypothetical does not reflect all of the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." Id. (citation and quotation marks omitted); see also Taylor v. Commissioner of Social Sec. Admin., 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the hypothetical nor the answer properly set forth all of Taylor's impairments, the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings.").

Here, because the ALJ erroneously rejected the opinion of Dr. Sunde and plaintiff's subjective testimony, the ALJ's hypothetical question to the VE did not account for the limitations established by that evidence. (Tr. at 81-84.) Accordingly, plaintiff is also entitled to summary judgment on this claim.

## CONCLUSION

After having found error, "'[t]he decision whether to remand a case for additional evidence, or simply to award benefits[,] is within the discretion of the court.'"[9] Trevizo, 871 F.3d at 682 (quoting Sprague v. Bowen, 812 F.2d 1226, 1232 (9th Cir. 1987)). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly

---

[9] In light of the ALJ's multiple errors and the court's finding that this matter must be remanded for further proceedings, the court finds it unnecessary to reach plaintiff's remaining claim of error. See Morales v. Berryhill, 239 F.Supp.3d 1211, 1220 (E.D. Cal. 2017) ("In light of the remand for payment of benefits required by the resolution of the two claims addressed above, the court need not address plaintiff's third claim for relief.").

14

>    discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020.

Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin., 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Given the ALJ's multiple and repeated errors and the length of time plaintiff's claim has been pending, the court is reluctant to send this matter back to the ALJ for yet another bite at the apple. See, e.g., Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) ("Allowing the Commissioner to decide the issue again would create an unfair 'heads we win; tails, let's play again' system of disability benefits adjudication."); Moisa v. Barnhart, 367 F.3d 882, 887 (9th Cir. 2004) ("The Commissioner, having lost this appeal, should not have another opportunity to show that Moisa is not credible any more than Moisa, had he lost, should have an opportunity for remand and further proceedings to establish his credibility.").

Nonetheless, given the ALJ's multiple errors, the scope of the period at issue and evidence of record, the court cannot say that further administrative proceedings would serve no useful purpose. This matter, therefore, will be remanded for further proceedings.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 16) is denied;

3. The Commissioner's decision is reversed;

////

////

15

4. This matter is remanded for further proceedings consistent with this order; and

5. The Clerk of the Court shall enter judgment for plaintiff, and close this case.

Dated:  September 7, 2020

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\cairns2905.ord